IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

BENJAMIN RAMEY

   PLAINTIFF,

V.

                                    No. 07-02279-RJL

INTERNATIONAL BROTHERHOOD

OF ELECTRICAL WORKERS,

LOCAL 1900,

   DEFENDANT.

## PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S MOTION TO DISMISS THE CLAIM OF MISREPRESENTATION AND CONSPIRACY, IN SUPPORT OF A U.S. SUPREME COURT RULING

(FOODNOTE 10) 671 F. 2D 87 (CA2 1982).

I. THE LOCAL MISREPRESENTED THE PLAINTIFF ON NUMEROUS OCCASIONS, EVEN TRYING TO INTIMIDATE PLAINTIFF'S KEY WITNESS, LOMAN DUDLEY, A UNION REP. HIMSELF AND INSISTED THAT PLAINTIFF'S INVESTIGATOR DISCONTINUE FROM CONTACTING THE LOCAL, ALL FOR REASONS OF CONSPIRING WITH THE COMPANY

RECEIVED
JAN 2 1 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

so that plaintiff would not prevail, for the sake the kidnap claim plaintiff filed against the company, that is presently on appeal in Superior Court, so the local need to be held accountable for their outrageous behavior.

II. The statue of limitation is 3 years and plaintiff request the court to set a hearing date.

III. A order to oppose defendants motion to dismiss was filed with this motion.

Ex. 1, The ruling on the statue of limitation

IV. The local never once challenged the alcohol test that was forensically invalid, Ex. 2 or who terminated plaintiff, then allowed Pepco's alcohol policy to supersede a federal DOT law and do to the above reasons, plaintiff did not receive due process.

## Certificate of Service

I hereby certify that I have caused a true and correct copy of the foregoing motion to be served by first class mail, postage pre-paid on the 21st day of Jan, 2008, on the following indivisual:

Robert Paul, Esq.
1025 Conn. Ave. N.W.
Wash. D.C., 20036

Respectfully submitted,

*Benjamin Ramey*

Benjamin Ramey
4251 Clay St. N.E.
Wash. D.C., 20019
(202) 213-8154

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

BENJAMIN RAMEY

   PLAINTIFF,

V.                                                  No. 07-02279 (RJL)

INTERNATIONAL BROTHERHOOD

OF ELECTRICAL WORKERS,

LOCAL 1900,

   DEFENDANT.

ORDER

UPON CONSIDERATION OF PLAINTIFF, BENJAMIN RAMEY'S OPPOSITION MOTION TO DEFENDANT'S MOTION TO DISMISS, THE COURT ORDERS AS FOLLOWS:

PLAINTIFF'S OPPOSITION MOTION TO DEFENDANT'S MOTION TO DISMISS IS GRANTED.

ORDERED THIS _____ DAY OF _____

_____

U.S. DISTRICT COURT JUDGE

Ex. 1

U.S. Supreme Court
DelCostello v. Teamsters, 462 U.S. 151 (1983)
DelCostello v. International Brotherhood of Teamsters

No. 81-2386

Argued April 25, 1983

Decided June 8, 1983*

462 U.S. 151

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR

THE FOURTH CIRCUIT

Syllabus

The issue in each of these cases is what statute of limitations applies in an employee suit against an employer and a union, alleging the employer's breach of a collective bargaining agreement and the union's breach of its duty of fair representation by mishandling the ensuing grievance or arbitration proceedings. United Parcel Service, Inc. v. Mitchell, 451 U. S. 56, held in a similar suit that an employee's claim against the employer was governed by a state statute of limitations for vacation of an arbitration award, rather than by a state statute for an action for breach of contract, but left open the issues as to what state statute should govern the employee's claim against the union or whether, instead of applying a state statute of limitations, the provisions of § 10(b) of the National Labor Relations Act establishing a 6-month limitations period for making charges of unfair labor practices to the National Labor Relations Board should be borrowed. In No. 81-2386, respondent local union brought a formal grievance under the collective bargaining agreement based on petitioner employee's alleged improper discharge. After a hearing, a joint union-management committee informed petitioner of its conclusion that the grievance was without merit, and the committee's determination became final on September 20, 1977. On March 16, 1978, petitioner filed suit in Federal District Court, alleging that the employer had discharged him in violation of the collective bargaining agreement, and that the union had represented him in the grievance procedure in a discriminatory, arbitrary, and perfunctory manner. The District Court ultimately granted summary judgment against petitioner, concluding that Mitchell compelled application of Maryland's 30-day statute of limitations for actions to vacate arbitration awards to both of petitioner's claims. The Court of Appeals affirmed. In No. 81-2408, petitioner local union invoked arbitration after it was unsuccessful in processing respondent employees' grievances based on the employer's alleged violations of the bargaining agreement arising from job-assignment practices. On February

Page 462 U. S. 152

1

I

A

Philip DelCostello, petitioner in No. 81-2386, was employed as a driver by respondent Anchor Motor Freight, Inc., and represented by respondent Teamsters Local 557. On June 27, 1977, he quit or was discharged [Footnote 3] after refusing to drive a tractor-trailer that he contended was unsafe. He took his complaint to the union, which made unsuccessful informal attempts to get DelCostello reinstated and then brought a formal grievance under the collective bargaining agreement. A hearing was held before a regional joint union-management committee. The committee concluded that the grievance was without merit. DelCostello was informed of that decision in a letter dated August 19, 1977, forwarding the minutes of the hearing and stating that the minutes would be presented for approval at the committee's meeting on September 20. DelCostello responded in a letter, but the minutes were approved without change. Under the collective bargaining agreement, the committee's decision is final and binding on all parties.

On March 16, 1978, DelCostello filed this suit in the District of Maryland against the employer and the union. He

Page 462 U. S. 156

alleged that the employer had discharged him in violation of the collective bargaining agreement, and that the union had represented him in the grievance procedure "in a discriminatory, arbitrary and perfunctory manner," App. in No. 81-2386, p.19, resulting in an unfavorable decision by the joint committee. Respondents asserted that the suit was barred by Maryland's 30-day statute of limitations for actions to vacate arbitration awards. [Footnote 4] The District Court disagreed, holding that the applicable statute was the 3-year state statute for actions on contracts. [Footnote 5] 510 F.Supp. 716 (1981). On reconsideration following our decision in Mitchell, however, the court granted summary judgment for respondents, concluding that Mitchell compelled application of the 30-day statute to both the claim against the employer and the claim against the union. 524 F.Supp. 721 (1981). [Footnote 6] The Court of Appeals affirmed on the basis of the District Court's order. 679 F.2d 879 (CA4 1982) (mem.).

B

Donald C. Flowers and King E. Jones, respondents in No. 81-2408, were employed as craft welders by Bethlehem Steel Corp. and represented by petitioner Steelworkers Local 2602. [Footnote 7] In 1975 and 1976, respondents filed several

Page 462 U. S. 157

grievances asserting that the employer had violated the collective bargaining agreement by assigning certain welding duties to employees in other job categories and departments

4

of the plant, with the result that respondents were laid off or assigned to noncraft work. The union processed the grievances through the contractually established procedure and, failing to gain satisfaction, invoked arbitration. On February 24, 1978, the arbitrator issued an award for the employer, ruling that the employer's job assignments were permitted by the collective bargaining agreement.

Respondents filed this suit in the Western District of New York on January 9, 1979, naming both the employer and the union as defendants. The complaint alleged that the company's work assignments violated the collective bargaining agreement, and that the union's "preparation, investigation and handling" of respondents' grievances were "so inept and careless as to be arbitrary and capricious," in violation of the union's duty of fair representation. App. in No. 81-2408, p. 10. The District Court dismissed the complaint against both defendants, holding that the entire suit was governed by New York's 90-day statute of limitations for actions to vacate arbitration awards. [Footnote 8] The Court of Appeals reversed on the basis of its prior holding in Mitchell v. United Parcel Service, Inc., 624 F.2d 394 (CA2 1980), that such actions are governed by New York's 6-year statute for actions on contracts. [Footnote 9] Flowers v. Local 2602, United Steel Workers of America, 622 F.2d 573 (CA2 1980) (mem.). We granted certiorari and vacated and remanded for reconsideration in light of our reversal in Mitchell. Steelworkers v. Flowers, 451 U.S. 965 (1981). On remand, the Court of Appeals rejected the argument that the 6-month period of § 10(b) applies. Accordingly, following our decision in Mitchell, it applied the 90-day arbitration statute and affirmed the dismissal as to the employer. As to the union, however, the

Page 462 U. S. 158

court reversed, concluding that the correct statute to apply was New York's 3-year statute for malpractice actions. [Footnote 10] 671 F.2d 87 (CA2 1982).

C

In this Court, petitioners in both cases contend that suits under Vaca v. Sipes, 386 U. S. 171 (1967), and Hines v. Anchor Motor Freight, Inc., 424 U. S. 554 (1976), should be governed by the 6-month limitations period of § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). Alternatively, the Steelworkers, petitioners in No. 81-2408, argue that the state statute for vacation of arbitration awards should apply to a claim against a union, as well as to one against an employer. [Footnote 11] We granted certiorari in both cases and consolidated them for argument. 459 U.S. 1034 (1982).

II

A

As is often the case in federal civil law, there is no federal statute of limitations expressly applicable to this suit. In such situations, we do not ordinarily assume that Congress

5

Ex. 2

# Bryan W. Brown

Attorney at Law

400 Fifth Street, NW
Suite 300
Washington, DC 20001
(202) 639-0221
attorney@bryanwbrown.com



To:   William Bach
From: Bryan W. Brown
Re:   Benjamin Ramey
Date: July 19, 2007

    I am currently an attorney barred to practice law in the District of Columbia and the Commonwealth of Virginia. I am a member of the D.C. Superior Court Traffic Panel and a Duty Attorney in D.C. Superior Court. I have been practicing in the area of criminal defense with a primary focus on defense of alcohol related driving offenses for over 5 years. I attend annual trainings regarding breath testing and the potential errors associated with breath testing. With the knowledge I have gained in my legal practice and educational seminars I have evaluated the documents presented. Those documents included an "Alcohol Testing Form" with a printout from a Breathalyzer 7419 xeroxed onto it, a Memo from Pepco dated September 30, 2003, a Employee Grievance Form, a Certificate of Training, a two page Delcaration of Laman Dudley, and a statement by Benjamin Ramey. After reviewing the materials, it is apparent that the breath test conducted on Mr. Ramey is not forensically valid. The test was not conducted sufficiently close in time to the incident for the results to be valid. The U.S. Capital Police Breath Testing Training manual requires two tests to be conducted no more then 10 minutes apart so that accuracy can be demonstrated. That was not done with Mr. Ramey's test. Capital Police standards also require the testing to be done within two hours, which was also not done in Mr. Ramey's case.

    A test so far after an individual could have possible had a drink is highly unreliable. There are many factors to consider some of which include whether the individual was in the absorption, distribution, or elimination phase. That is to say was any alcohol consumed being absorbed into his blood, distributed throughout his blood, or eliminated from his blood. Generally, once an elimination phase is reached, the body eliminates alcohol at a rate of approximately .015% per hour. This number, however, can vary dramatically depending on the individual. Furthermore, the time a person remains in the three phases also varies dramatically. These factors make using a test so remote in time highly unreliable.

    A number of other factors also make breath machine readings unreliable. The inherent margin of error for most machines is around 10%. This error is added to a potentially 15% margin of error that can result from an improper breath pattern near the time of testing. Also added to the total margin of error can be an 8.6% margin of error per 1 degree Celcius difference between actual core body temperature and the assumed core body temperature. Also, Hematocrit level can result in an additonal 14% margin of error. When combined, the total margin of error

of a breath machine can approach 47.6%. This margin of error assumes a test taken shortly after the period when you want to know the Blood Alcohol Content. Additional causes of error can result from partition ratio error, mouth alcohol error, and extrapolation error. Because of the many potential causes of error in breath testing, a direct test of the blood is the most appropriate method for determining actual blood-alcohol levels.

In conclusion, the results of the test used on Mr. Ramey on August 30, 2003 are not forensically valid, and should be of no evidentiary value in determining Mr. Ramey's Blood Alcohol Content while he was on the job some 12 hours prior to the test. The test was taken far too remotely from the time Mr. Ramey was on the job, the two test that were taken were not taken within 10 minutes of each other, and the results of breath test without controls to eliminate potential causes of error make the results unreliable. As such, the results of the breath test should not have been used in the decision of whether or not to take action against Mr. Ramey for alleged violation of PEPCO policy.